THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JESI J. CAMPBELL, | : | CIVIL ACTION |
| Plaintiff | : | |
| | : | |
| v. | : | |
| | : | |
| KILOLO KIJAKAZI, | : | |
| Acting Commissioner of the | : | |
| Social Security Administration, | : | |
| Defendant | : | NO. 22-4213 |

**MEMORANDUM**

CAROL SANDRA MOORE WELLS
UNITED STATES MAGISTRATE JUDGE                                                                July 31, 2023

Jesi Campbell ("Plaintiff") seeks judicial review, pursuant to 42 U.S.C. § 405(g), of the Social Security Administration Commissioner's ("the Commissioner") final decision, denying her claim for Disability Insurance Benefits (DIB) under Title II of the Social Security Act, and for Supplemental Security Income (SSI) under Title XVI of the Social Security Act. Plaintiff filed a brief supporting her request for review, the Commissioner responded, and Plaintiff filed a reply. For the reasons set forth below, Plaintiff's Request for Review will be granted, and Judgment will be entered in Plaintiff's favor and against Defendant.

**I.      PROCEDURAL HISTORY**[1]

On June 7, 2019, Plaintiff applied for DIB and SSI, alleging disability beginning September 15, 2015.[2] R. at 55. The Social Security Administration (SSA) initially denied Plaintiff's claim on August 5, 2019, and upon reconsideration on January 10, 2020, so she requested a hearing. *Id.*

---

[1] This court has reviewed and considered the following documents in analyzing this case: Plaintiff's Brief and Statement of Issues in Support of Request for Review ("Pl.'s Br."), Defendant's Response to Request for Review of Plaintiff ("Def.'s Resp."), Plaintiff's Reply Brief ("Pl.'s Reply"), and the administrative record ("R.").

[2] Plaintiff subsequently amended her onset date to March 28, 2019. R. at 55.

1

On March 22, 2021, Plaintiff appeared telephonically for a hearing before Administrative Law Judge Margaret M. Gabell ("the ALJ"). *Id.* Plaintiff, represented by an attorney, and vocational expert, Carolyn E. Rutherford, Ph.D. ("the VE"), testified at the hearing. *Id.* at 110. On July 16, 2021, the ALJ, using the sequential evaluation process for disability,[3] issued an unfavorable decision. *Id.* at 52, 72. The Appeals Council denied Plaintiff's request for review, on September 8, 2022, making the ALJ's findings the Commissioner's final determination. *Id.* at 1-7. Plaintiff sought judicial review from this court, on October 20, 2022. Both parties consented to the undersigned's jurisdiction, pursuant to 28 U.S.C. § 636(c)(1).

## II.   FACTUAL BACKGROUND

A.   <u>Plaintiff's Personal History</u>

Plaintiff, born on November 19, 1985, R. 110, was 35 years old when the ALJ rendered

---

[3] The Social Security Regulations provide the following five-step sequential evaluation for determining whether or not an adult claimant is disabled:

> 1. If claimant is working, doing substantial gainful activity, a finding of not disabled is directed. Otherwise proceed to Step 2. *See* 20 C.F.R. §§ 404.1520(b), 416.920(b).
>
> 2. If claimant is found not to have a severe impairment which significantly limits her physical or mental ability to do basic work activity, a finding of not disabled is directed. Otherwise proceed to Step 3. *See* 20 C.F.R. §§ 404.1520(c), 416.920(c).
>
> 3. If claimant's impairment meets or equals criteria for a listed impairment or impairments in Appendix 1 of Subpart P of Part 404 of 20 C.F.R., a finding of disabled is directed. Otherwise proceed to Step 4. *See* 20 C.F.R. §§ 404.1520(d), 416.920(d).
>
> 4. If claimant retains the residual functional capacity to perform past relevant work, a finding of not disabled is directed. Otherwise proceed to Step 5. *See* 20 C.F.R. §§ 404.1520(f), 416.920(f).
>
> 5. The Commissioner will determine whether, given claimant's residual functional capacity, age, education and past work experience in conjunction with criteria listed in Appendix 2, s/he is or is not disabled. *See* 20 C.F.R. §§ 404.1520(g), 416.920(g).

her decision. R. at 72. The highest grade of education Plaintiff completed was twelfth grade. R. at 112. At the time of the hearing, she resided with her boyfriend and minor son. *Id.* at 112.

B. <u>Plaintiff's Testimony</u>

At the March 22, 2021 administrative hearing, Plaintiff testified regarding alleged limitations that result from physical and mental impairments and have prevented full-time employment since 2015. R. at 112-113. She stated that in 2015, she was diagnosed with Lyme disease, which rendered her unable to work. *Id.* at 116.

Plaintiff testified about her daily activities. She takes her dog for short walks and does a "little bit" of light cleaning and cooking. *Id.* at 117. She is able to drive, only short distances during daytime. *Id.*

Plaintiff stated that she experiences pain and related symptoms from the following conditions: fibromyalgia, irritable bowel syndrome, migraines, polyarthralgia, and neuropathic pain. *Id.* She also suffers from depression and anxiety. *Id.* At the time of the hearing, Plaintiff testified that she was being treated for migraines, cervical dystonia, and degenerative disc disease in her neck. *Id.* at 126. She testified that she gets headaches daily and over fourteen migraines monthly. *Id.* Her symptoms, reportedly, have not improved since she stopped working. *Id.* at 119. Furthermore, she cannot sit or stand for long because she gets numbness and pain in her legs and feet. *Id.* at 120. Her medication induces severe fatigue; she can only sleep three to four hours a night. *Id.* at 123. Plaintiff emphasized the impact her medical conditions regularly have on her daily functioning:

> there are many days that I'm unable to do [] simple tasks due to my conditions, like my migraines that put me in bed all day or severe pain. It makes it hard to get up. Migraine fog, it makes it hard to think, and my anxiety cripples me. I struggle every day to take care of myself, and on the days that I'm unable to, I require the help of my boyfriend and my son . . . .

R. at 134.

C.     Vocational Expert's Testimony

At the administrative hearing, the VE characterized Plaintiff's past jobs: (1) cashier, semiskilled[4]; (2) sandwich maker, unskilled[5]; (3) stock clerk, semiskilled; (4) fast food manager, skilled[6]; (5) breakfast attendant, unskilled; (6) hotel clerk, semiskilled; (7) night auditor, skilled; (8) retail salesclerk, semiskilled; (9) store manager, skilled.  R. at 128-129.

The ALJ's first hypothetical presented to the VE an individual of Plaintiff's age, education, and past work experience limited to light exertional work.[7]  *Id.* at 129.  Moreover, the job would require the following limitations:

> no climbing of ladders, ropes, or scaffolds, no exposure to unprotected heights, only occasional climbing of ramps and stairs, frequent reaching, handling, and fingering, no more than occasional overhead reaching and lifting, [the] individual would need to avoid temperature extremes and outdoor work, [the] individual would be

---

[4] "Semi-skilled work is work which needs some skills but does not require doing the more complex work duties. Semi-skilled jobs may require alertness and close attention to watching machine processes; or inspecting, testing or otherwise looking for irregularities; or tending or guarding equipment, property, materials, or persons against loss, damage or injury; or other types of activities which are similarly less complex than skilled work, but more complex than unskilled work.  A job may be classified as semi-skilled where coordination and dexterity are necessary, as when hand or feet may be moved quickly to do repetitive tasks." 20 C.F.R. §§ 404.1568(b), 416.968(b).

[5] "Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time.  The job may or may not require considerable strength.  For example, we consider jobs unskilled if the primary work duties are handling, feeding and offbearing (that is, placing or removing materials from machines which are automatic or operated by others), or machine tending, and a person can usually learn to do the job in 30 days, and little specific vocational preparation and judgment are needed.  A person does not gain work skills by doing unskilled jobs." 20 C.F.R. §§ 404.1568(a), 416.968(a).

[6] "Skilled work requires qualifications in which a person uses judgment to determine the machine and manual operations to be performed in order to obtain the proper form, quality, or quantity of material to be produced.  Skilled work may require laying out work, estimating quality, determining the suitability and needed quantities of materials, making precise measurements, reading blueprints or other specifications, or making necessary computations or mechanical adjustments to control or regulate the work.  Other skilled jobs may require dealing with people, facts, or figures or abstract ideas at a high level of complexity." 20 C.F.R. §§ 404.1568(c), 416.968(c).

[7] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.  If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. §§ 404.1567(b), 416.967(b).

>able to tolerate an occasional exposure to dust, odors, wetness, gases, fumes, and poorly ventilated areas. [The] [i]ndividual would be limited to unskilled work, jobs involving only simple, routine tasks, making simple decisions, tolerating occasional changes in the workplace, occasional interaction with co-workers and supervisors, and no direct public interaction.

*Id.* at 128-130.  The VE responded that, although Plaintiff's prior positions would be eliminated, other jobs exist in the national economy that such an individual could perform, including (1) unskilled clerical worker, 170,000 positions nationally; (2) packer, 220,000 positions nationally; and (3) assembly worker, 350,000 positions nationally.  *Id.* 129-131.

Next, the ALJ inquired whether any jobs exist in the national economy if, along with the limitations outlined in the first hypothetical, the exertion level was reduced to sedentary.[8]  *Id.* at 131.  The VE responded that such an individual could perform the following jobs: (1) assembly worker, 40,000 positions nationally; (2) inspector or sorter, 40,000 positions nationally; and (3) bench worker, 75,000 positions nationally.  *Id.*

The ALJ's third hypothetical asked the VE to consider the addition of the following criteria to her second hypothetical: the individual would need to (1) alternate from standing or sitting every thirty minutes; (2) take approximately a ten-minute change of position; and (3) remain on task.  *Id.*  The VE replied that there would be no impact on the sedentary work positions previously provided.  *Id.*

The ALJ next asked the VE for any applicable light jobs under the third hypothetical, and the VE offered three positions: (1) assembly worker, 250,000 positions nationally; (2) packer, 80,000 positions nationally; and (3) office worker, 25,000 positions nationally.  *Id.*  The VE added

---

[8] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.  Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. §§ 404.1567(a), 416.967(a).

that the availability of these positions would be unaffected by an inability to use foot controls or push and pull with one's lower extremities. *Id.* at 132-33.

Finally, the ALJ asked the VE to consider an individual who required or was limited by any of the following conditions: (1) two-three rest breaks lasting ten to 15 minutes each (in addition to regularly scheduled rest breaks); (2) allowance for an off-task and unproductivity rate of 15-20%; (3) a regular absence rate of one day per week; or (4) an inability to sit, stand, and walk, in combination, for eight hours. *Id.* at 131-32. The VE opined that any of these requirements or limitations would be work-preclusive. *Id.*

### III. THE ALJ'S FINDINGS

In her decision, the ALJ issued the following findings:

1. [Plaintiff] meets the insured status requirements of the Social Security Act through June 30, 2020.

2. [Plaintiff] has not engaged in substantial gainful activity since March 28, 2019, the amended onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. [Plaintiff] has the following severe impairments: Fibromyalgia, Irritable Bowel Syndrome (IBS), migraine headaches, Degenerative Disc Disease (DDD) of the cervical spine, cervical dystonia, inflammatory arthritis, Depressive Disorder, and Anxiety Disorder (20 CFR 404.1520(c) and 416.920(c)).

4. [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, [the ALJ found] that [Plaintiff] has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except only occasional climbing of ramps and stairs, balancing, stooping, kneeling, crouching, and crawling; however, no climbing of ladders, ropes, or

scaffolds. No use of foot controls and no pushing/pulling with the lower extremities. The claimant can frequently reach, handle, and finger; however, she is limited to only occasional overhead reaching. She must avoid temperature extremes and outdoor work. [Plaintiff] can endure only occasional exposure to pulmonary irritants (e.g., dust, odors, gases, fumes, poorly ventilated areas, etc.) and wetness; however, no exposure to heights. Further, [Plaintiff] is limited to unskilled work, defined as simple, routine tasks with simple decisionmaking and only occasional changes in the workplace. While she can endure occasional contact with co-workers and supervisors, she can have no direct contact with the public.

6. [Plaintiff] is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. [Plaintiff] was born on November 19, 1985 and was 29 [sic] years old, which is defined as a younger individual age 18-44, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. [Plaintiff] has at least a high school education (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that [Plaintiff] is "not disabled," whether or not the claimant has transferable job skills (see SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering [Plaintiff]'s age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. [Plaintiff] has not been under a disability, as defined in the Social Security Act, from March 28, 2019, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

R. at 58-72.

## IV.   DISCUSSION

A.   <u>Standard of Review</u>

Judicial review of the Commissioner's final decision is as follows.  The Commissioner's findings of fact will not be disturbed if substantial evidence supports them.  *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 91 (3d Cir. 2007); *Schaudeck v. Comm'r of Soc. Sec. Admin.*, 181 F.3d 429, 431 (3d Cir. 1999).  Substantial evidence is not "a large or considerable amount of evidence, but rather 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).  While it is more than a mere scintilla of evidence, *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019), it may amount to less than an evidentiary preponderance.  *Fargnoli v. Halter*, 247 F.3d 34, 38 (3d Cir. 2001); *Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988).

Overall, this test is deferential to the ALJ.  *Monsour Med. Ctr. v. Heckler*, 806 F.2d 1185, 1190-91 (3d Cir. 1986), *cert. denied*, 482 U.S. 905 (1987).  The court should affirm the ALJ's findings of fact that are supported by substantial evidence, even when the court, acting *de novo*, might have reached a different conclusion.  *Id.*  Indeed, the court may not undertake a *de novo* review of the Commissioner's decision by reweighing the record evidence itself.  *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011); *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005); *Monsour Med. Ctr.*, 806 F.2d at 1190-91.  Nor is the court permitted to "impose [its] own factual determinations."  *Chandler*, 667 F.3d at 359.  *See Burns v. Barnhart*, 312 F.3d 113, 118 (3d Cir. 2002) ("We also have made clear that we are not permitted to weigh the evidence or substitute our own conclusions for that of the fact-finder.").  By contrast, the Commissioner's legal conclusions are subject to *de novo* review.  *Poulos*, 474 F.3d at 91; *Schaudeck*, 181 F.3d at

431.

B.   Burden of Proof in Disability Proceedings

To be found "disabled" under the Act, Plaintiff must carry the initial burden of demonstrating that she cannot engage in "any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a). Plaintiff may establish a disability through: (1) medical evidence meeting one or more serious impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1; or (2) proof that the impairment is severe enough that Plaintiff cannot engage in any type of "substantial gainful work which exists in the national economy." *Heckler v. Campbell*, 461 U.S. 458, 460 (1983); 42 U.S.C. § 423(d)(2)(A).

Under the first method, Plaintiff is considered *per se* disabled by meeting one of the "listed" impairments. *Heckler*, 461 U.S. at 460. Under the second method, Plaintiff must initially demonstrate that a medically determinable impairment prevents returning to their past employment. *See Brown*, 845 F.2d at 1214. If Plaintiff proves that the impairment results in functional limitations to performing their past relevant work, then the burden of proof shifts to the Commissioner to prove that work exists in the national economy, which Plaintiff can perform given their age, education, work experience, and residual functional capacity. *See Poulos,* 474 F.3d at 92; *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993).

C.   Review of the Administrative Law Judge's Decision

Applying the sequential evaluation process, the ALJ concluded that Plaintiff could not perform any of her past relevant work. R. at 70. However, she could perform other work in the national economy, since suitable jobs in significant numbers also existed. *Id.* at 71. These jobs

included those identified by the VE: (1) assembly worker, (2) inspector or sorter, and (3) bench worker. *Id.* at 131. The ALJ concluded that, based on Plaintiff's age, education, work experience, and residual functional capacity (RFC), she was not disabled from March 28, 2019, through the date of her decision, July 16, 2021. *Id.* at 72.

In her brief, Plaintiff argues that remand is warranted because the ALJ: (1) failed to properly evaluate the medical opinion evidence when determining her mental RFC; and (2) erred by failing to consider Plaintiff's subjective testimony properly. Pl.'s Br. at 1. The Commissioner denies Plaintiff's assertions. Def.'s Resp. at 6, 8, 16.

1. The ALJ Properly Evaluated the Medical Opinion Evidence in Forming Plaintiff's RFC

Plaintiff first argues that the ALJ failed to properly evaluate the medical evidence supporting her claim that the symptoms and limitations related to her fibromyalgia and migraine headaches render her disabled. Pl.'s Br. at 3. According to Plaintiff's contention, the ALJ erred by "wholly disregarding the explanations provided by the treating board-certified physicians in relevant areas of medicine—rheumatology and neurology—for assessing [Plaintiff]'s disability due to fibromyalgia and/or migraines." Pl.'s Br. at 12. She states that the ALJ has not provided a meaningful discussion of the supportability of the medical opinions or their consistency. *Id.* This court disagrees.

An ALJ need not discuss every piece of relevant evidence. *Fargnoli*, 247 F.3d at 42. Rather, the ALJ's opinion, "read as a whole [must] illustrate[] that the ALJ considered appropriate factors in reaching [her] conclusion." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004). When an ALJ considers medical opinions in the record, the governing regulations indicate that supportability and consistency are the two most important factors. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). Those are the only two factors an ALJ must consider explicitly. *Id.* Supportability

refers to the objective medical evidence and supporting explanation the medical source provides to justify her medical opinions. 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1). Consistency refers to whether, and how consistent, the medical source's opinion is with evidence from other medical and nonmedical sources in the record. 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2).

The court begins by briefly reviewing the opinions of Plaintiff's treating specialists, whom she claims the ALJ erroneously only minimally considered. Pl.'s Br. at 8, 12. The ALJ stated that she found the opinion of Dr. Shirley Albano-Aluqin, M.D., unpersuasive, because it was unsupported and inconsistent with the entirety of the medical record. R. at 67. She found her opinion internally contradictory, because it stated that Plaintiff could stand for fifteen minutes at a time, but could not stand at all during an 8-hour workday. *Id.* Additionally, Plaintiff's doctor opined that she could not sit at all during a workday, lift any weight, ever bend or stoop, and could not even occasionally raise her arms over shoulder level; the ALJ found these extreme limitations unsupported and inconsistent with the evidence of Plaintiff's somewhat improved condition with treatment. *Id.* The ALJ also found the opinion of Plaintiff's neurologist, Dr. Roderick Spears, M.D., flawed, and, therefore, unsupported and inconsistent with the medical evidence, because it was not a function-by-function assessment of Plaintiff's ability to work based on the identified symptoms. *Id.* at 67-68. Since Plaintiff's symptoms improved with treatment, and Dr. Spears did not clarify whether he was considering Plaintiff's condition at a baseline, or during a headache episode, she found his opinion unpersuasive. *Id.*

The ALJ, as Plaintiff alleges, did not "wholly disregard[]" the opinions of Dr. Albano-Aluquin, Plaintiff's rheumatologist, and Dr. Spears. Pl.'s Br. at 12. Instead, she provided a reasoned explanation for why she found them unpersuasive, citing both their failure to support their opinions and their opinions' inconsistency with the totality of the medical evidence.

11

The ALJ also discussed the opinions of the state agency physician Dr. Hong S. Park, M.D., and the additional medical source statements provided by Drs. Monfared and Coleman. R. at 67-69. As for each of these opinions, the ALJ discusses the weight she assigned, based on either the opinion's supportability, or lack thereof, with the medical evidence identified, and the opinion's consistency with other medical sources. *Id. See* 20 C.F.R. §§ 404.1520c(a)-(c), 416.920c(a)-(c). Hence, her explanations adequately complied with the governing regulations, and this court will not remand on this basis.

2. <u>The ALJ Erred by Not Properly Considering Plaintiff's Subjective Testimony</u>

Plaintiff argues that the ALJ's evaluation of her subjective complaints was flawed, because it was unsupported by substantial evidence. Pl.'s Br. at 19. In this case, the ALJ reviewed the evidence of record and found that Plaintiff's testimony was inconsistent with the evidence. R. at 66. More specifically, she determined that Plaintiff's statements concerning "the intensity, persistence and limiting effects of these symptoms" were unsupported by the record. *Id.*

As part of an RFC analysis, the ALJ must examine Plaintiff's subjective complaints by evaluating the intensity and persistence of the symptoms to determine the extent to which of those symptoms operate to limit the individual's ability to work. 20 C.F.R. §§ 404.1529(c), 416.929(c). Social Security Ruling 16-3p, 2016 SSR LEXIS 4 establishes a two-step process in evaluating the claimant's subjective symptoms: (1) determine if there is an underlying medically determinable physical or mental impairment, shown by medically acceptable clinical and laboratory diagnostic techniques, that could reasonably be expected to produce the claimant's pain or symptoms; then (2) evaluate the intensity, persistence, and limiting effects of the symptoms to determine the extent to which they limit the claimant's functioning. SSR 16-3p, 2016 SSR LEXIS 4 at *18. In evaluating the intensity, persistence, and limiting effects of Plaintiff's symptoms, the ALJ must

12

consider relevant factors[9] such as objective medical evidence, evidence from medical sources, treatment course and effectiveness, daily activities, and consistency of Plaintiff's statements with the other evidence of record. *Id.*

The ALJ acknowledges Plaintiff's "residual pain and dysfunction due to her physical impairments," and cites Plaintiff's routine and conservative treatment as evidence that her physical impairments were not as disabling as claimed. R. at 66. However, she also generally attributes "at least a portion of [Plaintiff]'s problems . . . [to the] multiple medications" that constitute Plaintiff's treatment. *Id.* This latter statement suggests that Plaintiff's treatment course may not be working, but instead contributes to her limitations, hence the ALJ should have more clearly reasoned and reconciled such conflicting evidence. *See Cotter v. Harris*, 642 F2d 700, 704 (3d Cir. 1981) (stating that an ALJ's decision "should be accompanied by a clear and satisfactory explication of the basis on which it rests").

As for Plaintiff's mental impairments, while the ALJ likewise acknowledges Plaintiff's "significant indicia of depression and anxiety," she then cites Plaintiff's routine and conservative treatment, and the fact that Plaintiff never required a psychiatric hospitalization or emergency department visit for psychiatric treatment during the relevant period. R. at 66. The ALJ notes Plaintiff's somewhat improved condition, ascribing it to "consistent treatment," and references Plaintiff's daily activities, as support that she exhibits a "greater degree of capability than alleged." *Id.* Yet, she does not adequately highlight how the medical record evidence is inconsistent with

---

[9] More specifically, factors the ALJ may consider, in addition to objective medical evidence, include: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the complained of pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain; (5) other treatment received for relief of symptoms; (6) any other measures used to relieve pain; and (7) other factors related to the claimant's functional limitations and restrictions because of their symptoms. *See* 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); SSR 16-3p. The ALJ may also consider inconsistencies between Plaintiff's statements regarding her pain and the medical evidence. *See* 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4); SSR 16-3p.

Plaintiff's reports of fatigue and an inability to focus. For example, the medical record details that some of the ongoing symptoms of Plaintiff's depression and anxiety include sleep disturbance and decreased concentration. *Id.* at 805, 1199, 3006, 3008-09. The ALJ erred by not sufficiently addressing whether the combination of these impairments and symptoms is, in fact, consistent with Plaintiff's testimony.

This court finds the ALJ's analysis inadequate, and, therefore, her decision is unsupported by substantial evidence. Accordingly, the ALJ's decision reflects that she failed to rely upon the factors SSR 16-3p establishes that should be considered, to adequately discount Plaintiff's statements regarding the intensity, persistence, and limiting effects of her pain. Accordingly, this court grants Plaintiff's request to remand on this basis. Upon remand, the ALJ shall adequately address whether Plaintiff's testimony about her symptoms is supported by the medical opinion evidence.

## V.   CONCLUSION

A thorough review of the relevant law and the record indicates that substantial evidence does not support the ALJ's decision, in as much as the ALJ did not adequately explain the medical opinion evidence relied upon to discount Plaintiff's testimony about her subjective complaints of pain and related symptoms. Accordingly, Plaintiff's Request for Review is granted. An implementing Order and Order of Judgment follow.